## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## WILMINGTON DIVISION

IN RE:                                              **CHAPTER 11**
**JEFFREY LYNN WILLIAMS**                     **CASE NO. 14-04290-5-DMW**
**MARY KAY BELL WILLIAMS**
     **DEBTORS**

## PLAN OF REORGANIZATION

Pursuant to the provisions of 11 U.S.C. § 1123, the Debtors hereby submit the following Plan of Reorganization (the "Plan"):

## I.  SUMMARY OF PLAN

The Plan contemplates a reorganization of debts and continuation of the Debtors' business.  In accordance with the Plan, the Debtors intend to satisfy certain creditor claims from income earned through continued operations, including the rental of certain property.

The Plan is based on the Debtors' belief that the interests of its creditors will be best served if it is allowed to reorganize its debts as described herein.

The Debtors' liabilities will be paid according to the priorities of the Bankruptcy Code and the Orders of this Court. The specific amounts and terms of payment will be made according to the treatment of each respective creditor.

## II.  DEFINITIONS

1.      "ADMINISTRATIVE CLAIM" shall mean any Claim entitled to priority under § 507(a)(1) of the Bankruptcy Code.

2.      "ALLOWED" shall mean (a) any Claim against the Debtors, proof of which was timely filed or by order of the Bankruptcy Court was not required to be filed; or (b) any Claim that has been listed in the Schedules as liquidated in amount and not disputed or contingent; and in each such case in (a) or (b) above, as to which either (1) no objection to the allowance thereof or other similar pleading has been filed within the applicable period, or (2) an objection or other similar pleading has been filed and the Claim has been allowed by a Final Order of the Bankruptcy Court, but only to the extent so allowed.

3.      "AVAILABLE CASH" shall mean the total cash available for distribution on the "Effective Date" (as the term is defined below).

4.      "BANKRUPTCY CODE" shall mean the United States Bankruptcy Code, Title 11 of the United States Code, as enacted in 1978 and thereafter amended.  References to "§___" herein shall refer to a section of the Bankruptcy Code, 11 U.S.C. § 101, et seq.

5.      "BANKRUPTCY RULES" shall mean the Federal Rules of Bankruptcy Procedure, as amended from time to time, as applicable to Chapter 11 cases.

6.      "CLAIM" shall mean a duly listed or a timely filed claim which is allowed in order to be paid by the Court.

7.      "CLASS" shall mean any one of the Classes of Claims or Interests designated in Article III of the Plan.

8.      "CONFIRMATION DATE" shall mean the date of entry by the Court of an order confirming the Plan at or after a hearing pursuant to 11 U.S.C. § 1129.

9.      "CONFIRMATION HEARING" shall mean the hearing conducted by the Court regarding confirmation of the Plan pursuant to 11 U.S.C. § 1129.

10.     "CONFIRMATION ORDER" shall mean the order of the Court confirming the Plan.

11.     "COURT" shall mean the United States Bankruptcy Court for the Eastern District of North Carolina, including the United States Bankruptcy Judge presiding in the Chapter 11 case of the Debtors.

12.     "CREDITORS" shall mean all creditors of the Debtors holding claims for unsecured debts, liabilities, demand or claims of any character whatsoever.

13.     "DEBTOR" shall mean the Debtor (or Debtors, if more than one) identified on the first page of this Plan.

14.     "DISBURSING AGENT" shall mean the Debtors or that person selected by the Court who shall perform the duties and have the rights and obligations described herein.

15.     "DISCLOSURE STATEMENT" shall mean the Disclosure Statement describing this Plan prepared in accordance with §1125 and approved by order of the Bankruptcy Court, to be distributed to the holders of claims whose votes with respect to this Plan are to be solicited.

16.     "DISPUTED CLAIM" shall mean any claim (a) that is scheduled by the Debtors as disputed, contingent or unliquidated, or (b) that is scheduled by the Debtors, or proof of which has been filed with the Bankruptcy Court and with respect to which a timely objection to allowance, in whole or in part, has been filed and which objections have not been (i) withdrawn or settled, or (ii) determined by a Final Order.

17.     "DISTRIBUTION DATE" shall mean the date on which distributions are to be made under the Debtors' Plan.

18.     "ESTATE" or "BANKRUPTCY ESTATE" shall mean all legal or equitable

2

interests of the Debtors in property, whether personally held or not, at the time of the Debtors' bankruptcy filing.

19.     "EFFECTIVE DATE" shall be that date on which the Confirmation Order becomes final and non-appealable.

20.     "FINAL DECREE" shall mean the order of this Court pursuant to FEDERAL RULE OF BANKRUPTCY PROCEDURE 3022 closing this case.

21.     "FINAL ORDER" shall mean an order of the Court that has been entered and either (a) the time for appeal from such entered order has expires; or (b) any appeal that has been timely filed has been dismissed or otherwise finally determined.

22.     "GENERAL UNSECURED CLAIM" shall mean any claim, whether or not liquidated or contingent, other than a priority claim, administrative claim, or secured claim.

23.     "IMPAIRED" classes of creditors are those whose claims or interests are altered by the Plan, or who will not receive under the Plan the allowed amount of their claims in cash as of the "Effective Date" (as defined above).

24.     "PETITION DATE" shall mean the date the Debtors filed a voluntary chapter 11 petition.

25.     "PLAN" shall mean this Plan of Reorganization in its present form or as it may be amended or modified.

26.     "PRIORITY CLAIM" shall mean any claim to the extent entitled to priority in payment under § 507.

27.     "PRO-RATA" shall mean the amount of cash or property to be paid or distributed to a claimant with respect to an Allowed Claim on a particular date, in accordance with the ratio, as of such date, of the dollar amount of the Allowed Claim of such person in the indicated class to the aggregate dollar amount of Claims in the indicated class (including, in each such calculation, the full amount of Disputed Claims in the class which have been asserted or are otherwise pending and which have not yet been allowed or otherwise disposed of).

28.     "SALE" shall mean the disposition of certain assets of the Debtors through a transfer of ownership from the Debtors to another person or entity as set forth in this Plan.

29.     "SALE PROCEEDS" mean the remaining funds of a sale of certain assets of the Debtors as set forth in this Plan, after payment of all reasonable and ordinary closing costs, (including but not limited to ad valorem taxes, commissions and any other costs permitted under 11 U.S.C. § 506(c)).

30.     "SECURED CREDITORS" shall mean all creditors who hold a lien, security interest or any other encumbrance which have been properly perfected as required by law with

3

respect to property owned by the Debtors, to the extent of the value of the collateral.

      31.    "SUBSTANTIAL CONSUMMATION" shall mean the time the reorganized Debtors has commenced the distribution of initial Plan payments to all creditor classes.

      32.    "TAX CLAIM" shall mean any claim entitled to priority in treatment pursuant to 11 U.S.C. § 507(a)(8).

### III.  CLASSIFICATION AND TREATMENT OF CLASSES OF CLAIMS AND INTERESTS

      The Debtors classify the following classes of claims, indicating whether said Class is impaired or unimpaired, and proposes the following treatment:

      **A**.    **Class 1 - Administrative Costs:**

      (1)    <u>Description of Claims</u>.  Class 1 consists of claims for any cost or expense of administration pursuant to 11 U.S.C. §§ 503, 506, and 507.

      The following Claims of professionals will be paid subject to Court approval:

Oliver Friesen Cheek, PLLC      Attorney for the Debtor      To be determined by the Court

      (2)    <u>Impairment</u>.  This class will be impaired.

      (3)    <u>Treatment</u>.  Administrative costs and expenses approved by the Court shall be paid in cash and in full including accruals to date of payment within ten (10) days from the Effective Date of the Plan or upon entry of an Order allowing such Administrative Claim, whichever is later, except that professional fees shall be paid in full upon entry of an Order allowing the same, or pursuant to any agreement between the Debtor and the holder of a Class 1 Allowed Claim.

      In the event that funds are not available to pay such costs and expenses within ten (10) days of the Effective Date of the Plan, then each holder of such a claim that agrees to receive payments over time will receive payments from the Debtor until paid in full.  Such Claims remaining unpaid ten days following the Effective Date shall accrue interest at a rate of four percent (4%) per annum.

      **B**.    **Class 2 – Ad Valorem Taxes:**

      (1)    <u>Description of Claims.</u>  Class 2 consists of Claims for taxes owed by the Debtors to any city, county, or other municipality or taxing entity entitled to tax the property of the Debtors based upon the value of the property assessed.  The Debtors are aware of the following claim(s) in this Class:

Onslow County Tax Collector      Claim 11      $2,895.65

| Pender County Tax Collections | Claim 3 | $37,741.18 (secured) |
| Town of Topsail Beach Tax Collector | | $2,083.26 |

(2)    <u>Impairment</u>.    This class will be unimpaired.

(3)    <u>Treatment</u>.    The Debtors propose to pay Claims in this class with annual payments within a period of five years from the Date of the Order of Relief.  Annual payments shall commence on fifteenth day of the first month of the first full calendar quarter following the Effective Date and shall continue every consecutive year thereafter, and shall include interest at the applicable rate imposed by the tax collector until paid in full.  The Debtors may also satisfy Claims in this class in whole or in part through the sale or foreclosure of real property or have a secured creditor pay the taxes in the event real property is surrendered to the secured creditor.

Ad valorem taxes for the current tax year may be treated as a prepetition claim and not as an administrative expense.  *See* <u>*In Re St. Lawrence Homes, Inc.,*</u> *Case No. 09-00775-8, Order dated July 28, 2010, citing* <u>*In Re Members Warehouse, Inc.*</u>*, 991 F.2d 116, 118-119 (4th Cir. 1993).*

**C.    <u>Class 3 – Tax Claims:</u>**

(1)    <u>Description of Claims</u>.    Class 3 consists of claims against the Debtors for income taxes, withholding taxes, unemployment taxes and/or any and all other taxes levied or entitled to be levied against the Debtor by the Internal Revenue Service or the North Carolina Department of Revenue plus interest as allowed by law. The Debtors are aware of the following claim(s) in this Class:

| Internal Revenue Service | Claim 1 | $15,226.45 |

(2)    <u>Impairment</u>. This class will be unimpaired.

(3)    <u>Treatment</u>.    The Debtor proposes the following treatment:

**Costs and expenses of administration**, if any, shall be paid in cash and in full including accruals to date of payment within thirty (30) days from the Effective Date.   The Debtors do not anticipate that any such claims will be filed.

**Unsecured priority tax claims**, if any, described in Bankruptcy Code § 507(a)(8) shall be paid in full in annual installments over a period not exceeding five (5) years from the Date of the Order of Relief and payments shall commence on the earlier of January 15th, April 15th, July 15th, or October 15th following the Effective Date and shall continue annually thereafter, with interest at the statutory rate as of the Effective Date.   For feasibility purposes, the Debtors estimate annual payments of $4,096.33.

**Secured claimants**, if any, shall retain their secured interest in the property of the Debtors.  The taxing authority shall retain its lien and secured status as to the underlying secured tax liability, plus accruing interest at the statutory rate from the Effective Date. The Debtors shall pay these Claims over a period not to exceed five (5) years from the Date of the Order of Relief

beginning on the earlier of January 15th, April 15th, July 15th, or October 15th following the Effective Date and shall continue annually thereafter.

In the event that the Debtor fails to timely make a required payment as to any claim of the North Carolina Department of Revenue (the "Department"), then, subject to a ten (10) day right to cure following written notice of default from the Department, the Department shall be permitted to exercise any and all of its collection remedies under non-bankruptcy law as to any and all of its claims without further order of the Court. The rights of the Department to setoff under 11 U.S.C. § 553 shall not be altered by the Plan or the confirmation order entered in this matter and are expressly reserved. The claim of the Department is subject to adjustment on account of federal corrections, as required by N.C. Gen. Stat. § 105-130.20 (for corporations, LLCs and other entities) and N.C. Gen. Stat. § 105-159 (for individuals). Notwithstanding any other provisions of the Plan and the Confirmation Order, the Department shall retain any and all statutory tax liens that may have arisen by operation of statute prior to the Petition Date, except to the extent expressly stated in the Plan below.

**Unsecured general tax claims,** if any, will be treated as provided below in the section relating to "General Unsecured Claims."

### D.   **Class 4 – Bank of America:**

(1)   Description of Debt Account ending in 0568:  The Debtors are indebted to Bank of America pursuant to a loan in the original principal amount of $999,782.00. The loan is secured by a deed of trust encumbering ½ of the real property located at 430 North Anderson Boulevard, Topsail Beach, North Carolina and a vacant lot located at 432 North Anderson Boulevard, Topsail Beach, North Carolina.  The deed of trust is recorded in Pender County, North Carolina, Register of Deeds Book 3388, Page 292.  A portion of the real property described in the deed of trust is the Debtors' primary residence, and a portion of the real property described in the deed of trust is not the Debtors' primary residence.  The Note was modified on December 1, 2009, and the principal amount at that time was $1,040,768.79.  Bank of America filed claim number 8 in the amount of $1,112,618.34.

(2)   Impairment.   This class will be impaired.

(3)   Treatment.   The Debtors will cause an appraisal to be completed of the property owned by the Debtors and described in the deed of trust. The Debtors will treat the claim as a secured obligation of the Debtors in an amount equal to the lesser of: (1) the value of the property which secures the debt; or (2) (a) all outstanding principal and interest due on the petition date; plus (b) any interest, costs and expenses which may be approved by the Court pursuant to Section 506(b); (the "Secured Amount").  The creditor shall retain its lien with the priority thereof, as it existed on the Petition Date pursuant to 1129(b)(2)(A)(i)(I) of the Bankruptcy Code, until the Secured Amount is paid in full.  The Debtors will pay the Secured Amount in 360 consecutive monthly payments of principal and interest at the current contract rate of 4.375% per annum beginning on the 15th day of the first full month after the Effective Date.  The balance of the claim shall be treated as a general unsecured claim in the Unsecured Creditor Class.

E.   **Class 5 – Bank of America:**

(1)   <u>Description of Debt</u> Account ending in 6999:  The Debtors are indebted to Bank of America pursuant to an equity line of credit agreement in the maximum amount of $280,200.00.  The loan is secured by a deed of trust encumbering ½ of the real property located at 430 North Anderson Boulevard, Topsail Beach, North Carolina and a vacant lot located at 432 North Anderson Boulevard, Topsail Beach, North Carolina.   The deed of trust is recorded in Pender County, North Carolina Register of Deeds Book 3388, Page 309.  Bank of America filed claim number 10 in the amount of $282,566.95.

(2)   <u>Impairment</u>.   This class will be impaired.

(3)   <u>Treatment</u>.  The Debtors will cause an appraisal to be completed of the property owned by the Debtors and described in the deed of trust.  The Debtors will treat the claim as a secured obligation of the Debtors in an amount equal to the value of the property which secures the debt, if any (the "Secured Amount").   The creditor shall retain its lien with the priority thereof, as it existed on the Petition Date pursuant to 1129(b)(2)(A)(i)(I) of the Bankruptcy Code, until the Secured Amount is paid in full.  The Debtors will pay the Secured Amount, if any, in 360 consecutive monthly payments of principal and interest at the current contract rate of 2.5% per annum beginning on the 15th day of the first full month after the Effective Date. The balance of the claim shall be treated as a general unsecured claim in the Unsecured Creditor Class.

F.   **Class 6 – Bank of America:**

(1)   <u>Description of Debt Account ending in 0699</u>:  The Debtors are indebted to Bank of America pursuant to a loan in the maximum amount of $100,000.00. The loan is secured by a second lien on real property commonly known as 1702 Carolina Boulevard, Topsail Beach, Pender County, North Carolina.   The deed of trust is recorded in the Pender County, North Carolina Register of Deeds Book 3301, Page 178.  Bank of America filed claim number 13 in the amount of $101,389.89.

(2)   <u>Impairment</u>.   This class will be impaired.

(3)   <u>Treatment</u>.  The Debtors will treat the claim as a secured obligation of the Debtors in an amount equal to the value of the property which secures the debt (the "Secured Amount"). The Debtor's petition lists 1702 Carolina Boulevard, Topsail Beach, North Carolina, with a value of $500,000, which the Debtors believe is an accurate value of the property.   The creditor shall retain its lien with the priority thereof, as it existed on the Petition Date pursuant to 1129(b)(2)(A)(i)(I) of the Bankruptcy Code, until the Secured Amount is paid in full.   The Debtors will pay the Secured Amount, if any, in 360 consecutive monthly payments of principal and interest at the current contract rate of 2.5% per annum beginning on the 15th day of the first full month after the Effective Date.   The balance of the claim shall be treated as a general unsecured claim in the Unsecured Creditor Class.

G.    <u>**Class 7 – Bank of America:**</u>

(1)    <u>Description of Debt Account ending in 8866</u>:  The Debtors are indebted to Bank of America pursuant to a loan in the original principal amount of $72,164.50. The loan is secured by a deed of trust on real property commonly known as 117 North Brig Drive, Surf City, Onslow County, North Carolina.  The deed of trust is recorded in the Onslow County, North Carolina Register of Deeds Book 2766, Page 180.  Bank of America filed claim number 12 in the amount of $86,664.99.

(2)    <u>Impairment</u>.    This class will be impaired.

(3)    <u>Treatment</u>.  The Debtors will surrender the collateral securing the claim to Bank of America.  Bank of America will have 120 days from the Effective Date to complete the foreclosure of its collateral and shall have 180 days following the Effective Date to file a proof of claim for any deficiency, which shall be treated in the Unsecured Creditor Class.

H.    <u>**Class 8 – Bank of America:**</u>

(1)    <u>Description of Debt Account ending in 7399</u>:  The Debtors are indebted to Bank of America pursuant to an equity line of credit in the maximum amount of $100,000.00. The loan is secured by a first position lien deed of trust on real property commonly known as 248 Shellbank Road, Sneads Ferry, Onslow County, North Carolina.  The deed of trust is recorded in the Onslow County, North Carolina Register of Deeds Book 3112, Page 038.  Bank of America filed claim number 9 in the amount of $99,712.03.

(2)    <u>Impairment</u>.    This class will be impaired.

(3)    <u>Treatment</u>.  The Debtors will treat the claim as a secured obligation of the Debtors in an amount equal to the lesser of: (1) the value of the property which secures the debt; or (2) (a) all outstanding principal and interest due on the petition date; plus (b) any interest, costs and expenses which may be approved by the Court pursuant to Section 506(b); (the "Secured Amount").  The Debtor's petition lists 248 Shellbank Road, Sneads Ferry, North Carolina, with a value of $130,000, which the Debtors believe is an accurate value of the property The creditor shall retain its lien with the priority thereof, as it existed on the Petition Date pursuant to 1129(b)(2)(A)(i)(I) of the Bankruptcy Code, until the Secured Amount is paid in full.  The Debtors will pay the Secured Amount in 360 consecutive monthly payments of principal and interest at the current contract rate of 2.5% per annum beginning on the 15th day of the first full month after the Effective Date.  The balance of the claim shall be treated as a general unsecured claim in the Unsecured Creditor Class.

I.    <u>**Class 9 – Bank of America:**</u>

(1)    <u>Description of Debt</u>:  The real property commonly known as 35 ½ acres on Highway 210, Currie, Pender County, North Carolina, and owned by the female Debtor, is subject to a deed of trust is recorded in the Pender County, North Carolina Register of Deeds

8

Book 2886, Page 010 in favor of Bank of America, and pursuant to a loan in the original maximum amount of $102,147.00. Bank of America has not filed a claim.

      (2)    <u>Impairment</u>.   This class will be unimpaired.

      (3)    <u>Treatment</u>. This obligation shall be treated as a fully secured obligation in an amount equal to (a) the outstanding principal and interest due on the Petition Date; plus (b) interest accrued through the Effective Date at the contractual non-default rate of interest; plus (c) costs and expenses approved by the Court pursuant to 11 U.S.C. § 506(b); less (d) all post-petition payments. Bank of America shall retain its lien with the priority thereof, as existed on the Petition Date pursuant to Bankruptcy Code § 1129(b)(2)(A)(i)(I), until the secured portion of this claim is paid in full. This obligation shall be paid according to the original terms of the agreement between Bank of America and the Debtor.

    **J.**    <u>**Class 10 – Bank of the Ozarks:**</u>

      (1)    <u>Description of Debt Account ending in 3333</u>:  The Debtors are indebted to Bank of the Ozarks pursuant to a loan between Woodforest Bank and Shoreside, LLC in the original principal amount of $495,000.00. The loan is secured by a deed of trust on vacant real property commonly known as 432 North Anderson Boulevard, Topsail Beach, Onslow County, North Carolina. The deed of trust is recorded in the Onslow County, North Carolina Register of Deeds Book 3049, Page 351. The Note was modified on April 11, 2014. The Note was assigned to Bank of the Ozarks from Woodforest Bank on July 16, 2010 after the Federal Deposit Insurance Company was appointed as the receiver for Woodforest Bank. Bank of the Ozarks filed claim number 5 in the amount of $143,944.16.

      (2)    <u>Impairment</u>.   This class will be impaired.

      (3)    <u>Treatment</u>. The Debtors will cause an appraisal of 432 North Anderson Boulevard to be completed to determine the value. The Debtors will treat the claim as a secured obligation of the Debtors in an amount equal to the lesser of: (1) the value of the property which secures the debt; or (2) (a) all outstanding principal and interest due on the petition date; plus (b) any interest, costs and expenses which may be approved by the Court pursuant to Section 506(b); (the "Secured Amount"). The creditor shall retain its lien with the priority thereof, as it existed on the Petition Date pursuant to 1129(b)(2)(A)(i)(I) of the Bankruptcy Code, until the Secured Amount is paid in full. The Secured Amount of the claim will be paid by co-obligors of the Debtors on the debt. The balance of the claim shall be treated as a general unsecured claim in the Unsecured Creditor Class.

    **K.**    <u>**Class 11 – Bank of the Ozarks:**</u>

      (1)    <u>Description of Debt Account ending in 0495</u>:  The Debtors are indebted to Bank of the Ozarks pursuant to a loan in the original principal amount of $166,500.00. The loan is secured by a deed of trust on real property commonly known as 208 Cedar Avenue, Hampstead, Pender County, North Carolina. The deed of trust is recorded in the Pender County, North Carolina Register of Deeds Book 3254, Page 010. The Note was assigned to Bank of the Ozarks

from Woodforest Bank on July 16, 2010 after the Federal Deposit Insurance Company was appointed as the receiver for Woodforest Bank.  Bank of the Ozarks filed claim number 7 in the amount of $147,004.22.

(2)    Impairment.    This class will be impaired.

(3)    Treatment.  This obligation shall be treated as a fully secured obligation in an amount equal to (a) the outstanding principal and interest due on the Petition Date; plus (b) interest accrued through the Effective Date at the contractual non-default rate of interest; plus (c) costs and expenses approved by the Court pursuant to 11 U.S.C. § 506(b); less (d) all post-petition payments. Bank of Ozarks shall retain its lien with the priority thereof, as existed on the Petition Date pursuant to Bankruptcy Code § 1129(b)(2)(A)(i)(I), until the secured portion of this claim is paid in full. This obligation shall be amortized over a period of twenty-five (25) years, with interest at five (5%) percent per annum from and after the Effective Date.  Payments will begin on the fifteenth (15th) day of the first full month following the Effective Date of the Plan. For feasibility purposes, the Debtor estimates the monthly payment will be $859.37.

**L.    Class 12 – Nationstar Mortgage (account ending in 3057):**

(1)    Description of Debt.  The Debtors are indebted to Nationstar Mortgage pursuant to a loan in the original principal amount of $417,000.00 between the Debtors and AmTrust Bank. The loan is secured by a first position lien deed of trust on real property commonly known as 1702 Carolina Boulevard, Topsail Beach, Pender County, North Carolina.  The deed of trust is recorded in the Pender County, North Carolina Register of Deeds Book 3492, Page 274.  The Note was assigned to Nationstar Mortgage from AmTrust Bank on March 15, 2012.  Nationstar Bank filed claim number 2 in the amount of $440,719.29.

(2)    Impairment.    This class will be impaired.

(3)    Treatment.  This obligation shall be treated as a fully secured obligation in an amount equal to (a) the outstanding principal and interest due on the Petition Date; plus (b) interest accrued through the Effective Date at the contractual non-default rate of interest; plus (c) costs and expenses approved by the Court pursuant to 11 U.S.C. § 506(b); less (d) all post-petition payments. Nationstar Mortgage shall retain its lien with the priority thereof, as existed on the Petition Date pursuant to Bankruptcy Code § 1129(b)(2)(A)(i)(I), until the secured portion of this claim is paid in full. This obligation shall be amortized over the amortization period established in the original loan documents, as modified, with interest at the modified interest rate of four percent (4%) per annum from and after the Effective Date.  Payments will begin on the fifteenth (15th) day of the first full month following the Effective Date of the Plan.

**M.    Class 13 – Saltwater Landing Home Owners Association:**

(1)    Description of Debt.  The Debtors are indebted to the Saltwater Landing Home Owners Association based on their ownership of a lot commonly known as 117 North Brig Drive, Surf City, Onslow County, North Carolina (the "Lot"). The obligation is secured by a second position lien on the Lot.  Saltwater Landing Home Owners Association has not filed a

claim; however, the Debtors estimated $1,375.00 was owed on this obligation on the Petition Date

(2)     Impairment.    This class will be impaired.

(3)     Treatment.  The Debtors will surrender the collateral securing the claim to Bank of America.  The claim of Saltwater Landing Home Owners Association will be treated in the Unsecured Creditor Class.

### N.     **Class 14 – Executory Contract:**

(1)     Classification.  The Debtors are parties to the following executory contracts for management services related to certain properties owned by the Debtors.

| | |
|---|---|
| Kathy Parker Real Estate | 248 Shellbank Road, Sneads Ferry, Onslow County, North Carolina |
| Topsail Realty | 1702 Carolina Boulevard, Topsail Beach, Pender County, North Carolina |

Kathy Parker Real Estate and Topsail Realty (the "Property Managers") serve as the rental agents for the described properties owned by the Debtors.

(2)     Impairment.    This class will be unimpaired.

(3)     Treatment.     Pursuant to 11 U.S.C. § 365, the Debtors hereby assume the executory contracts with the Property Managers.

### O.     **Class 15 - Residential Rental Agreements:**

(1)     Classification.  Prior to the filing of the petition, the Debtors entered into the following lease agreements pursuant to which the tenants rent residential property from the Debtors. These leases are more particularly described as follows:

| | |
|---|---|
| Mark Weinkiper | 248 Shellbank Road, Sneads Ferry, Onslow County, North Carolina |
| Nealie Williams | 208 Cedar Avenue, Hampstead, Pender County, North Carolina |
| Wooten Farms | Portion of the 35 ½ acres on Highway 210 Currie, Pender County, North Carolina |

(2)     Impairment.    This class will be unimpaired.

(3)    Treatment.    Pursuant to 11 U.S.C. § 365, the Debtors hereby assume the residential rental agreements to the extent they have not already expired according to their terms.

### P.    Class 16 – General Unsecured Claims (the Unsecured Creditor Class):

(1)    Description of Class.    This class consists of all allowed, undisputed, non-contingent unsecured claims and deficiency claims listed in the Debtor's petition or as otherwise approved by the Court.

(2)    Impairment.    This class will be impaired.

(3)    Treatment.    The approximate total of general unsecured claims based on claims filed or scheduled, and projected deficiency claims, as of the date of the filing of this Plan is $231,623.41.  In accordance with the liquidation analysis attached as Exhibit C to the Disclosure Statement, the Debtor shall pay allowed general unsecured claims no more than $385,748.01. The Debtors shall give the unsecured class a lien on the real property located at 516 NC Highway 53 East, Burgaw, North Carolina and Lots 24-27 Highway 53 East, Burgaw, North Carolina.  The Debtors shall have a period of three years in which to market the properties for sale.  In the event that the Debtors sell the properties, the Debtors shall pay the unsecured creditors seventy percent (70%) of the net proceeds of the sale of the properties, after deduction of ordinary costs of sale, and the trustee of the deed of trust shall be authorized to release the property or properties from the deed of trust.  The balance of the payment for the unsecured claims shall be paid in twelve (12) annual installments.  In the event that the Debtors do not sell the properties, the Debtors shall pay the unsecured payment in twelve annual installments beginning on the fifteenth day of the first full month following three years after the Effective Date.  Interest shall accrue on the unsecured payment amount at the rate of one and one-half percent per annum (1.5%) commencing on the Effective Date.  All payments to this class shall be distributed pro rata.

The Debtors may investigate and pursue causes of action, with the purpose of reducing claims held by the Debtors to value for distribution pursuant to the priorities of the Bankruptcy Code and future orders of this Court for the benefit of the Debtor and the Debtors' creditors.

## IV.  TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

Except as otherwise specified in this Plan, all contracts which exist between the Debtor and any individual or entity, whether such contract be in writing or oral, which have not heretofore been rejected or heretofore been approved by Orders of the Court are hereby specifically rejected; provided, however, that this provision is not intended to reject and does not reject any agreement for the renewal or the extension of any loan or funds, presently binding and in effect between the Debtor and any secured creditor.  The Debtor hereby assumes all leases in which the Debtor is the Lessor and all shareholder agreements and operating agreements related to entities owned by the Debtor, if any.

Any person with a Claim arising from such rejection shall be deemed to hold a general unsecured claim and shall file a proof of claim within sixty (60) days of the Effective Date or be

12

forever barred from asserting any Claim relating to such rejection.

## V.  MEANS OF IMPLEMENTATION AND EXECUTION OF PLAN

A.      The Debtors propose to make payments under the plan from funds on hand, net proceeds from the sale of any assets, and any funds derived from the Debtors' income, including income from rental property.

With respect to each claim described above in Article III, except as otherwise expressly provided in Article III, the Debtors shall keep the collateral insured pursuant to the terms of the/each security instrument (i.e., the deed of trust, mortgage, security agreement or other applicable security instrument) (herein called the "Security Instrument," whether one or more) which secures the debt.  If the Debtors fail to make a payment as provided herein within twenty (20) days after its due date or fails to keep the collateral insured as provided herein within thirty days after written notice from the secured creditor of such failure, the secured creditor may declare the debt in default, give notice thereof to the Debtors, and exercise its remedies against the collateral that secures the debt.  The provisions of the Security Instrument that allow the secured creditor to foreclose on the collateral in the event of a default and all other provisions of the Security Instrument that relate to the collateral shall remain in effect.  Any financial covenants or other covenants in any of the loan documents relating to the debt, including but not limited to the Security Instrument, that do not relate to the preservation, protection, repossession or foreclosure of the collateral shall not be effective post-confirmation.

B.      Sale Free and Clear of Liens.  Any real and personal property owned by the Debtors that will be sold pursuant to this Plan will be sold free and clear of all liens, encumbrances, claims, interests, or other obligations.  In order to expedite the sale process, provide clear title to the properties sold, and satisfy certain anticipated requirements of title insurance companies providing title insurance to purchasers, simultaneous with the entry of the Order Confirming Plan, the Court will enter a free and clear order, which shall provide that all sales will be free and clear of all liens, interests, and other claims or interests.  All real or personal property sold by the Debtors shall be sold pursuant to the free and clear order to be entered.  No further motions related to the sales of property shall be required; provided however, the Debtors may file such motions and seek such orders to the extent needed to provide reasonable comfort or accommodation to the purchaser(s) or to specify the method of distribution of the sales proceeds.

C.      Distribution of Sales Proceeds.  Upon the sale of any real or personal property proposed to be sold by this Plan, the liens secured by such property shall attach to the net proceeds of sale remaining after payment of costs of sale and all reasonable and ordinary closing costs, (including but not limited to ad valorem taxes, commissions, and any other costs permitted under Section 506(c) of the Code), and shall be paid to lienholders in accordance with the priorities of such liens, and then to other creditors in accordance with the priorities of the Code. In the event the net proceeds of sale are insufficient to satisfy all claims within a class, such proceeds to be distributed to such class will be distributed pro rata.  The Debtors may elect to file additional motions with the Court setting forth the proposed distribution of any excess sales proceeds prior to distribution to creditors.

D.    <u>Preservation of Right to Credit Bid</u>.  All secured creditors shall retain the rights granted to them under § 363(k) to purchase their collateral via a credit bid upon the same or better terms of the proposed purchaser.  In the event of a private sale which shall not satisfy the claim of the secured creditor(s) in full, the Debtors shall provide the secured creditor with a copy of the purchase contract in the manner designated by such creditor and such creditor shall have until no later than one hour before the Debtors' deadline for accepting such contract to inform the Debtors in writing whether it wishes to purchase the property via a credit bid upon the same or better terms than that offered by the purchaser.  In the event the creditor does not provide written notification to the Debtors that it will purchase the property by credit bid, the creditor shall be deemed to waive its right to credit bid.  Each secured creditor shall be responsible for providing the Debtors with information concerning the method by which it wishes to be notified to potential purchase contracts for purposes of credit bidding (i.e. fax, electronic mail, or telephonic notification).

E.    <u>Deficiency Claims</u>.  Each secured creditor who receives the collateral securing their obligation shall have ninety (90) days after the Effective Date to file a proof of claim for any deficiency or be forever barred from asserting any deficiency claim and such obligation shall be deemed paid in full.  Such proof of claim shall include an itemization of the principal, interest, and other costs.  Any such deficiency claim shall be treated in the unsecured creditor class (Class 10).  In the event the Debtors obtain their Final Decree prior to the determination of any deficiency claim, such secured creditor shall inform the Disbursing Agent of such deficiency claim within the same time period.  In such event, a proof of claim shall not be required, but the secured creditor shall provide notice of such deficiency claim to the Disbursing Agent in a writing containing the same information.

F.    <u>De Minimis Distributions</u>.  No distribution of less than fifty dollars ($50.00) shall be required to be made to any holder of an allowed unsecured claim. Instead, the Debtors shall have the option of retaining such funds to be distributed at the time of the final distribution in accordance with the Plan.

G.    <u>Unclaimed Property</u>.  If any distribution remains unclaimed for a period of ninety (90) days after it has been delivered, or attempted to be delivered, such unclaimed property shall be forfeited by such holder of the claim and the Disbursing Agent shall not attempt to make any further distribution of such holder of the claim. Undistributed property shall be returned to the Debtors for distribution in accordance with the Plan.

H.    <u>Preservation of Avoided Transactions for the Benefit of the Estate</u>.    All transactions avoided or otherwise set aside pursuant to Sections 544, 547, 548, and/or 549, if any, shall be preserved for the benefit of the Estate pursuant to Section 551 and applicable case law.  Funds received from such transactions shall be distributed to creditors according to the priorities of the Code.  In the case of any lien that has been avoided which encumbered certain properties of the Debtors and have since been avoided, the lien shall remain on the public record and shall remain an encumbrance upon the real property.  However, all distributions made towards such deed of trust shall be distributed not to the named beneficiary of such deed of trust, but shall instead be paid to the Disbursing Agent for distribution to creditors.

I.     <u>Timing of Distributions</u>. Distributions under the Plan shall be made on the Distribution Date; provided however, that Court approved professionals may be paid as such fees and expenses are approved by the Court.   Any distribution required to be made hereunder on a day other than a business day shall be made on the next succeeding business day.   Any distribution required to be made hereunder on a day other than a business day shall be made on the next succeeding business day.

J.     All payments or distributions made by the Debtors shall be applied as indicated in the respective treatment for each creditor, or if no such application of payments is specified, then payments shall be applied first to outstanding interest and then to principal.  In the event that a creditor claims that it is entitled to costs and/or attorneys fees, such creditor must file a fee application with the Court and such costs and attorneys fees must be approved by the Court prior to such costs and attorneys fees becoming part of the creditor's allowed claim.

K.     The Debtors will execute and deliver all documentation to the Bankruptcy Court and to all parties in interest who are entitled to receive the same as required by the terms of the Plan and the Bankruptcy Code.

L.     <u>Revocation of Plan.</u>  The Debtors have reserved the right to revoke and withdraw this Plan before the entry of the Confirmation Order.  If the Debtors revoke or withdraw this Plan, or if confirmation of this Plan does not occur, then, with respect to the Debtors, this Plan shall be deemed null and void and nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against the Debtors, as the case may be, or any other Person or to prejudice in any manner the rights of the Debtors, as the case may be, or Person in any further proceedings involving such Debtors.

M.     The Debtors shall take such other action as necessary to satisfy the other terms and requirements of the Plan and the Bankruptcy Code.

N.     Except as expressly stated in the Plan, or allowed by a Final Order of the Bankruptcy Court, no interest, penalty, or late charge shall be allowed on any claim subsequent to the Petition Date, unless otherwise required by the Code.  No attorney's fees or expenses shall be paid with respect to any claim except as specified herein or as allowed by a Final Order of the Court.

O.     Confirmation of this plan shall constitute a finding that the Debtors do not waive, release, or discharge, but rather retains and reserves any and all pre-petition claims and any and all post-petition claims that it could or might assert against any party or entity arising under or otherwise related to any state or federal statute, state or federal common law, and any and all violations arising out of rights or claims provided for by Title 11 of the United States Code, by the FEDERAL RULES OF BANKRUPTCY PROCEDURE, or by the Local Rules of this Court, including all rights to assert and pursue any and all avoidance actions, preference actions, and any other actions pursuant to 11 U.S.C. §§ 545, 546, 547, 548, and 550, except to the extent such avoidance actions, preference actions, or other actions were assigned to a creditor(s) as part of the Debtors' Plan.  Further, the Debtors retain all rights to assert and pursue all claims under 11

U.S.C. § 542, including without limitation actions to seek turnover of estate assets, actions to recover accounts receivable, and/or actions to invalidate setoffs.

P.    Administrative claims unpaid on the Effective Date will be paid from funds on hand or as the parties otherwise agree.

Q.    All objections to claims, fee applications, and adversary proceedings will be filed with the Court within sixty (60) days after the Effective Date; provided however, that the Debtors retains the right to object or otherwise pursue any claims against secured creditors relating to the payoff and/or satisfaction of their secured claims.

R.    Claims Paid by Third Parties.  To the extent a claim holder receives payment in full or in part on account of such claim from a party that is not the Debtors, such creditor shall, within two (2) weeks therefore, inform the Debtors of such payment, and such creditor's claim shall be reduced accordingly for purposes of distribution under the Plan.

S.    Exemption from Transfer Taxes.  Pursuant to § 1146(c) of the Bankruptcy Code, the issuance, transfer, or exchange of notes or equity securities under the Plan, the creation of any mortgage, or other security interest, the making or assignment of any lease or sublease, or the making or delivery of any instrument of transfer under, in furtherance of, or in connection with the Plan, including without limitation, deeds, or bills of sale or assignments of personal property executed in connection with any of the transactions contemplated under the Plan, will not be subject to any stamp, real estate transfer, mortgage recording, sales, use, or other similar tax.  Each of the relevant state or local governmental officials or agents will forego the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment consistent with the applicable provisions of the Plan.

T.    Procedure for Payment of Professional Fees.  Current Court approved professionals shall not be subject to the fee application process for services rendered post-confirmation in furtherance of implementation of the confirmed Plan.

U.    Escrow Arrangements.    Unless otherwise stated in individual creditor treatments herein, the Debtors will no longer make any escrow payments for taxes, insurance, or any other expenses generally paid through escrowed funds.  The Debtor will pay such expenses directly from and after the Effective Date.  Escrowed funds held by a creditor shall be turned over to the Debtor on the Effective Date.

## VI.  PRESERVATION OF SECTION 506(c) CLAIMS

Notwithstanding confirmation of the Plan and the occurrence of the Effective Date, the Debtors shall have the right to seek recovery of the cost of maintaining and preserving any collateral or property.

## VII.  PRESERVATION OF CLAIMS AND AVOIDANCE ACTIONS

Notwithstanding anything to the contrary in the Plan or Disclosure Statement, the provisions of the Plan, Disclosure Statement, or Order Confirming Plan shall not have and are not intended to have, any res judicata or collateral estoppel effect with respect to any causes of action that the Debtor may assert, regardless of whether and to what extent such causes of action are specifically described in the Plan or Disclosure Statement.  Unless any causes of action are expressly waived, relinquished, released, compromised, or settled in the Plan or by Final Order of the Court, all such causes of action are expressly reserved and preserved for later adjudication and, therefore, no preclusion doctrine, including without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel, or laches shall apply so such causes of action upon or after confirmation of the Plan.  Furthermore, notwithstanding any provision or interpretation to the contrary, nothing in the Plan or Order Confirming Plan, including the entry thereof, shall be deemed to constitute a release, waiver, impediment, relinquishment, or bar, in whole or in part, of or to any recovery or any other claim, right, or cause of action possessed by the Debtors prior to the Effective Date.  This shall include, but is not limited to all pre-petition claims and any and all post-petition claims that he could or might assert against any party or entity arising under or otherwise related to any state or federal statute, state or federal common law, and any and all violations arising out of rights or claims provided for by Title 11 of the United States Code, by the Federal Rules of Bankruptcy Procedure, or by the Local Rules of this Court, including all rights to assert and pursue any and all avoidance actions, preference actions, and any other actions pursuant to 11 U.S.C. §§ 545, 546, 547, 548, 550, and 542, including without limitation actions to seek turnover of estate assets, actions to recover accounts receivable, and/or actions to invalidate setoffs.

## VIII.  SIMILAR TREATMENT FOR EACH CLAIM WITHIN A CLASS

The claims stated herein, by modification, Court Order, or other legally appropriate manner, may be modified throughout the course of payment under this Plan.  The Debtors, upon full payment as called for under the notes and deeds of trust, shall be entitled to have the note marked paid and satisfied and the deed of trust canceled as a matter of record, by the Trustee, or by appropriate application to this Bankruptcy Court, and upon a showing that the full amount of the monthly payments were made by the Debtors.

## IX.  PROVISIONS GOVERNING DISTRIBUTIONS

A.     Delivery of Distributions in General.  Distributions to holders of allowed claims shall be made:  (i) at the addresses set forth in the proofs of claim filed by such holders; (ii) at the addresses set forth in any written notices of address change submitted to the Court or Attorney for the Debtors after the date on which any related proof of claim was filed; or, if the information described in clauses (i) or  (ii) is not available, (iii) at the addresses reflected in the Debtors' schedules of liabilities.

B.     Distribution Dates.  It is the intent of this Plan that the distribution shall occur as early as practicable following the Effective Date.

C.     Cure Period.   The failure by the Debtors to timely perform any term, provision or covenant contained in this Plan shall not constitute an Event of Default unless and until the

Debtors have been given thirty (30) days written notice of the alleged default and provided an opportunity to cure.  Until the expiration of the thirty (30) day cure period, the Debtors shall not be deemed to be in default, and any performance or actions taken during such thirty (30) day cure period shall be considered timely for all purposes.  Such written notice pursuant to the Plan provisions and the passage of the thirty (30) day cure period shall constitute conditions precedent to bringing or filing any contested action by any person to enforce any right granted under this Plan.

## X.  ACCEPTANCE OR REJECTION OF PLAN; EFFECT OF REJECTION BY AN IMPAIRED CLASS

A.    Each Impaired Class Entitled to Vote Separately.  Each impaired class of claims shall be entitled to have the holders of claims therein vote separately as a class to accept or reject the Plan.

B.    Acceptance by a Class of Creditors.  Consistent with § 1126(c) of the Bankruptcy Code, and except as provided in § 1126(e) of the Bankruptcy Code, a class of claims shall have accepted the Plan if the Plan is accepted by holders of at least two-thirds (2/3) in dollar amount and more that one-half (1/2) in number of the allowed claims of that class that have timely and properly voted to accept or reject the Plan.

C.    Claimants Entitled to Vote.  Holders of impaired claims shall be entitled to vote if:

(1)    Such claim has been filed against the Debtors in a liquidated amount or has been listed on the Debtors' schedules other than as contingent, unliquidated or disputed, and as to which no proof of claim has been filed.  The claim shall be allowed solely for the purpose of voting on the Plan in the amount in which such claim has been filed or listed on the Debtors' schedules;

(2)    Such claim has been filed against the Debtors or listed on the Debtors' schedules and is the subject of an existing objection filed by the Debtors, and is temporarily allowed for voting purposes by order of the Court in accordance with FEDERAL RULE OF BANKRUPTCY PROCEDURE 3018;

(3)    Such claim has been filed in an undetermined amount, in which case the creditor shall not be entitled to vote unless the Debtors and the holder of the claim agree on an amount for voting purposes or the Court enters an order setting the amount of the claim that the creditor may ballot.

(4)    Any entity holding two or more duplicate claims shall be entitled to vote only one claim.

D.    Confirmation Hearing.  The Court will set a hearing on the confirmation of the Plan to determine whether the Plan has been accepted by the requisite number of creditors and whether the other requirements for confirmation of the Plan have been satisfied.

E.      <u>Acceptances Necessary to Confirm the Plan</u>.  At the Confirmation Hearing, the Court shall determine, among other things, whether the Plan has been accepted by each impaired class.  Under § 1126 of the Bankruptcy Code, an impaired class of Creditors is deemed to accept the Plan if at least two-thirds (2/3) in amount and more than one-half (1/2) in number vote to accept the Plan.  Further, unless there is unanimous acceptance of the Plan by an impaired class, the Court must also determine that class members will receive property with a value, as of the Effective Date of the Plan, that is not less than the amount that such class member would receive or retain if the Debtors' assets were liquidated as of the Effective Date of the Plan under Chapter 7 of the Bankruptcy Code.

F.      <u>Confirmation of Plan Without Necessary Acceptances</u>.  The Bankruptcy Code provides that the Plan may be confirmed even if it is not accepted by all impaired Classes.  In order to be confirmed without the requisite number of acceptances of each impaired class, the Court must find that at least one impaired class has accepted the Plan without regard to the acceptances of insiders, and the Plan does not discriminate unfairly against, and is otherwise fair and equitable, to such impaired class.  In the event that any class votes against the plan, the Debtors hereby request and move the Court under the provisions of this Plan entitled "Cramdown," for confirmation pursuant to the "cramdown" provisions of § 1129(b) of the Bankruptcy Code.  In connection therewith, the Debtor shall be allowed to modify the proposed treatment of the allowed claims in any class that votes against the Plan consistent with § 1129(b)(2)(A).

## XI.  "CRAMDOWN" FOR IMPAIRED CREDITORS
## NOT ACCEPTING THE PLAN

In respect to any class of creditors impaired but not accepting the Plan by the requisite majority in number or two-thirds (2/3) in amount, the proponent of this Plan requests the Court to find that the Plan does not discriminate unfairly and is fair and equitable in respect to each class of claims or interests that are impaired under the Plan and that the Court confirm the Plan without such acceptances by the said impaired classes.  The Debtors will also request that the Court establish a value for any assets, the value of which is in dispute between the Debtors and any secured creditor, at a valuation hearing under Section 506 of the Bankruptcy Code, to be scheduled at the same time as the hearing on confirmation of the Plan.

## XII.  EFFECT OF CONFIRMATION

A.      Except as otherwise provided in the Plan, the confirmation of the Plan vests all of the property of the estate in the Debtor.

B.      <u>Injunction</u>.  As of the Confirmation Date, except as otherwise provided in the Plan or the Confirmation Order, all persons that have held, currently hold, or may hold a claim, equity interest, or other debt or liability that is treated pursuant to the terms of the Plan or that is otherwise enjoined pursuant to Section 1141 of the Code, are enjoined from taking any of the following actions on account of any such claims, equity interests, debtors or liabilities, other than actions brought to enforce obligations under the Plan: (i) commencing or continuing in any

manner any action or other proceeding; (ii) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree or order; (iii) creating, perfecting, or enforcing any lien or encumbrance; (iv) asserting a setoff or right of recoupment of any kind against any debt, liability, or obligation; and/or (v) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of the Plan or the Confirmation order. Notwithstanding the foregoing, the Plan does not release or waive any claims that the Debtors may have against any party in interest. This injunction shall not affect any creditor's ability to enforce rights against non-Debtors and non-Debtor property.

## XIII.  RELEASE OF TITLE TO PROPERTY

A.      <u>Vehicles</u>.  Upon the satisfaction or other discharge of a security interest in a motor vehicle, mobile home, or in any other property of this estate in bankruptcy for which the certificate of title is in the possession of the secured party, the secured party shall within ten (10) days after demand and, in any event, within thirty (30) days of receipt of the payment in full pursuant to the Plan, execute a release of its security interest on the said title or certificate, in the space provided therefore on the certificate or as the Division of Motor Vehicles prescribes, and mail or deliver the certificate and release to the Debtors.  Confirmation of this Plan shall impose an affirmative and direct duty on each such secured party to comply with the provision.  This provision shall be enforced in a proceeding filed before the Bankruptcy Court and each such creditor consents to such jurisdiction by failure to file any timely objection to this Plan.  Such an enforcement proceeding may be filed by the Debtors in this case either before or after the closing of this case.  The Debtors specifically reserve the right to file a motion to reopen this case under Section 350 of Title 11 of the United States Code to pursue the rights and claims provided for herein.

B.      <u>Real Property</u>.  Pursuant to N.C.G.S. § 45-36.9, upon the satisfaction or other discharge of a security interest in real property for which a creditor holds a properly secured mortgage, the secured party shall within thirty (30) days after demand or within thirty (30) days of payment in full pursuant to the Plan, submit for recording with the Office of the Register of Deeds for the applicable County a satisfaction of its security interest and mail or deliver the recorded satisfaction document or documents to the Debtors.  The failure of any such party to comply with this section shall result in the imposition of statutory damages of $1,000.00, actual damages, costs and legal fees as provided for by Section 45-36.9(c) of the N.C. General Statutes. Confirmation of this Plan shall impose an affirmative and direct duty on each such secured party to comply with this provision.  This provision shall be enforced in a proceeding filed before the Bankruptcy Court and each such creditor consents to such jurisdiction by failure to file any timely objection to this plan.  Such an enforcement proceeding may be filed by the Debtors in this case either before or after the closing of this case.  The Debtors specifically reserve the right to file a motion to reopen this case under Section 350(b) of Title 11 of the United States Code to pursue the rights and claims provided for herein including all remedies for damages and attorney fees under applicable State and Federal statutes.

## XIV.  APPLICATION OF PLAN PAYMENTS

A.      All payments made by the Debtors shall be applied as indicated in the respective

treatment for each creditor, or if no such application of payments is specified, then payments shall be applied to principal and interest on a monthly basis according to the amortization schedule proposed for each creditor.  In the event that a creditor is entitled to costs and/or attorneys fees post-petition under Section 506(b) of the Code, such creditor must file an application in accordance with the Code and/or Bankruptcy Rules pertaining to approval of costs and/or attorney fees prior to such costs and/or attorneys fees becoming part of the creditor's allowed claim.  Confirmation of the Plan shall impose an affirmative duty and legal obligation on the holders and/or the servicers of any claims secured by liens, mortgages and/or deeds of trust to apply payments in the manner set forth in the Plan in accordance with Section 524(i).

B.     Confirmation of the Plan shall impose a duty on the holders and/or servicers of claims secured by liens on real property to apply the payments received from the Debtors to the month in which they were made under the plan or directly by the Debtors, whether such payments are immediately applied to the loan or placed into some type of suspense account and to otherwise comply with 11 U.S.C. § 524(i).

## XV.  RETENTION OF JURISDICTION

The Bankruptcy Court shall retain jurisdiction of these proceedings pursuant to and for the purposes of Sections 105(a) and 1127 of the Code and for, without limitation, the following purposes, inter alia:

1.     to determine any and all objections to the allowance of claims and/or interests;

2.     to determine any and all applications for allowance of compensation for periods prior to or after the Confirmation Date;

3.     to determine any and all applications pending on the Confirmation Date for the rejection and disaffirmance or assumption or assignment of executory contracts and the allowance of any claim resulting therefrom;

4.     to determine all controversies and disputes arising under or in connection with the Plan;

5.     to determine all applications, adversary proceedings and litigated matters pending on the Confirmation Date;

6.     to effectuate payments under, and performance of, the provisions of the Plan, including, but not limited to, future sales of personal and real property retained by the Estate;

7.     to determine such other matters and for such other purposes as may be provided for in the Confirmation Order;

8.     to determine all disputes regarding property of the Estate;

9.      to establish and adjust procedures for the orderly administration of the Estate;

10.     to determine matters that are subject to proceedings duly removed to the Bankruptcy Court; and

11.     to replace the Debtors-in-Possession with a Trustee for good cause shown.

## XVI.  MISCELLANEOUS PROVISIONS

A.      <u>Survival of Terms</u>.  The covenants, representations and agreements made in this Plan shall survive the Confirmation Date and the transactions contemplated herein.

B.      <u>Successors Bound</u>.  This Plan shall on the Consummation Date be binding upon and inure to the benefit of the respective heirs, successors and assigns of the Debtors, and the holders of claims and interests.

C.      <u>Controlling Law</u>.  This Plan shall be read and construed and take effect in all respects in accordance with the law as set forth in the United States Bankruptcy Code and the Rules promulgated thereunder.

D.      <u>Further Assurance</u>.  If at any time, the Debtors shall consider, or be advised, that any further releases, assurances or documents are reasonably necessary or desirable to carry out the provisions hereof, and the transactions contemplated herein, the holders of claims and the holders of interest shall, upon reasonable request, execute and deliver any and all documents and assurances, and do all things necessary or appropriate to carry out fully the provisions hereof.

E.      <u>Liens</u>.  Except as otherwise expressly set forth herein, all liens remaining in favor of any creditor in this action against the real property that arose prior to the filing of the petition shall be deemed to be released upon confirmation of the Plan.  The Debtors shall request and all parties shall provide such additional documentation as may be necessary to effectuate these releases.

F.      <u>Incorporation of Disclosure</u>.  All the terms and conditions of the Disclosure Statement are incorporated herein by reference.

G.      <u>Credit Reporting</u>.      Each Creditor who regularly makes reports to credit reporting bureaus shall ensure that their reports accurately reflect that the Debtors have filed bankruptcy and included all obligations owed to that Creditor in their Plan.  Further, all Creditors who make post-petition reports to credit reporting bureaus shall ensure that their reports accurately reflect the terms of all orders, including but not limited to cash collateral and orders confirming the Debtors' Plan.  Failure to make accurate reports to credit bureaus shall constitute a violation of automatic stay provisions of 11 U.S.C. § 362, if made post-petition but pre-confirmation.  Alternatively, if erroneous reports are made post-confirmation, then those reports shall be treated as violations of the Order Confirming Plan after notice and a hearing on the

alleged violations. The Debtors shall be exempted from the Fair Credit Reporting Act in pursuing a remedy against a creditor for erroneous credit reporting and the Bankruptcy Court shall retain jurisdiction to hear such matters.

## XVII.  DISCHARGE

Upon completion of payments to classes 1, 2, 3 and 16, the Debtor and the Estate will be discharged from all Claims and Liens and Liens expressly provided for in the Plan.   The discharge will be fully effective against all Creditors regardless of whether they have voted to accept or reject the Plan and regardless of whether the Plan is confirmed by consent or by resort to the provisions of section 1129(b) of the Bankruptcy Code.   However, even though no discharge will be entered until all payments are completed, the Debtor will seek to have the case closed upon substantial consummation as set forth in § 1101(2).  Further, the Debtor will seek to have the case automatically re-opened pursuant to § 350(b) without the payment of a fee, upon the filing and service on all creditors and the Bankruptcy Administrator, of a Notice of Completion of Plan Payments and Request for Entry of Discharge, allowing all parties twenty (20) days to file a response.

Respectfully submitted, this the 21st day of November, 2014.

s/Jonathan E. Friesen
Jonathan E. Friesen
N.C. State Bar No. 31535
Oliver Friesen Cheek, PLLC
Post Office Box 1584
New Bern, North Carolina 28563
Telephone: (252) 633-1930
Facsimile: (252) 633-1950
Email: jef@ofc-law.com
*Attorneys for Debtor*


s/Jeffrey Lynn Williams
Jeffrey Lynn Williams

s/Mary Kay Bell Williams
Mary Kay Bell Williams